**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| QUINCY K. BERRY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-7132 |
| | : | |
| LARRY KRASNER, et al., | : | |
| Defendants. | : | |

**MEMORANDUM**

**SURRICK, J.** **AUGUST 13, 2026**

Currently before the Court on statutory screening is the Second Amended Complaint ("SAC," ECF No. 16) filed by *pro se* Plaintiff Quincy K. Berry.[1] Berry brings this civil action pursuant to 42 U.S.C. § 1983 against the following Defendants:[2] Philadelphia District Attorney

---

[1] After filing an initial Complaint (ECF No. 2), Berry then filed an Amended Complaint (ECF No. 9), followed by a Second Amended Complaint (ECF No. 16). Berry's SAC thus became the governing pleading in this case. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("If a plaintiff amends [his] complaint, the new pleading 'supersedes' the old one: The 'original pleading no longer performs any function in the case.'" (citation omitted)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading." (internal citations omitted)). The Court notes that the SAC alleges an entirely different claim and set of events than that which was asserted in the original pleading. The prior versions never became ripe for statutory screening because Berry filed a series of motions to proceed *in forma pauperis* (ECF Nos. 1, 6, 11) that were denied due to insufficient financial information for the Court to grant that relief (ECF Nos. 5, 10, 13).

[2] Berry checked the boxes on the form he used indicating that he seeks to name the Defendants in their official capacities only. (SAC at 2-3.) Berry appears not to have understood the implication of checking the official capacity box. Claims against municipal employees named in their official capacity are indistinguishable from claims against the governmental entity that employs the Defendant. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

Because Berry does not attempt to allege an official capacity claim, *see Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978) (holding that, to state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation) the Court will liberally construe the SAC to assert claims against the Defendants in their individual capacities. *See*

Larry Krasner, Philadelphia Police Officer Andres Ortega, and Philadelphia Police Captain Christopher Bullick.[3] He also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Berry leave to proceed *in forma pauperis* and dismiss his SAC. Berry will be given an opportunity to cure the noted deficiencies by filing a third amended complaint.

## I. FACTUAL ALLEGATIONS[4]

Berry's allegations are sparse. He alleges he was pulled over on January 23, 2026, by Defendants Ortega and Bullick, who were accompanied by Officers Almelda and Waters. (SAC at 4.) The officers told Berry that he was pulled over because he "ran a red-light and [was] driving erratically." (*Id.*) Berry showed his identification before stepping outside of the vehicle. (*Id.*) When he was outside of the vehicle, the officers attempted to place handcuffs on him even though there was no "weapon on [his] person." (*Id.*) Berry claims that the next thing he remembers is "being punched, kicked, and tasered." (*Id.*) He was taken to Temple University Hospital and then transported to "Cherry Street Police Headquarters." (*Id.*) Berry claims that he was illegally detained, "forced to eat cheese sandwiches," drink tap water (as opposed to bottled

---

*Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings." (quotations omitted)); *Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed event though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).

[3] Although the City of Philadelphia is listed in the caption of Berry's SAC (*see* SAC at 1), it is not specifically identified as a Defendant in the portion of the form complaint where Berry listed the named defendants. (*Id.* at 2-3.)

[4] Unless otherwise stated, the factual allegations set forth in this Memorandum are taken from Berry's SAC. The Court adopts the sequential pagination assigned by the CM/ECF docketing system. On statutory screening, the Court may also consider publicly available court records. *Castro-Mota v. Smithson*, No. 20-940, 2020 WL 3104775, at *1 n.3 (E.D. Pa. June 11, 2020) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). Where the Court quotes from the SAC, punctuation, spelling, and capitalization errors will be cleaned up if needed for clarity.

water), undress in front of other people, and share a cell with "a mental[ly] incompetent person." (*Id.*)

Berry asserts that his Fourteenth Amendment due process rights are "connected to this issue," and he alleges wrongful incarceration and "discrimination of retaliation." (*Id.* at 3.) He contends that he was "arrested for a gun charge that was later beaten on Omnibus Motion." (*Id.* at 4.) He alleges that Defendant Krasner has "first-hand information" of the illegal charges and "failed to protect [Berry] from being retaliated against after filing of initial lawsuit in federal court on CJC with regards to discrimination."[5] (*Id.* at 4.) Berry also contends that Ortega "failed to protect [him] from being retaliated against by fellow co-workers," specifically alleging that he was "tasered, punched, and kicked . . . in the process of illegal detainment." (*Id.* at 4.) Berry seeks millions of dollars in damages. (*Id.* at 5.)

Publicly available records indicate that Berry was arrested by Philadelphia Police Officer Andres Ortega on January 23, 2026, and charged with possession of a firearm, carrying a firearm

[5] Berry's passing reference to retaliation is unsupported by underlying allegations and thus insufficient to assert a plausible claim. *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) ("A passing reference to an issue will not suffice to bring that issue before this court.") (cleaned up) (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)). His use of the term "CJC" is also unexplained.

Under the First Amendment, a government official is prohibited "from subjecting an individual to retaliatory action, including criminal prosecution, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). A plaintiff alleging retaliation must plead: "(1) that he engaged in constitutionally[] protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013) (citation and quotation marks omitted). A plaintiff alleging First Amendment retaliatory arrest must show the absence of probable cause. *See Nieves v. Bartlett*, 587 U.S. 391, 402 (2019).

The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may provide a link between the two for purposes of pleading causation. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). For example, allegations of (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link may be sufficient to allege a causal link. *See id.* at 424. Moreover, causation, like any other fact, can be pled plausibly from the "record as a whole." *Id.* "[W]here the temporal proximity is not so close as to be 'unduly suggestive,'" the appropriate test is "timing plus other evidence." *Id.*

without a license, and resisting arrest. *See Commonwealth v. Berry*, No. MC-51-CR-0001483-2026 (Phila. Muni. Ct.). At a preliminary hearing on February 25, 2026, the charges were held for court, and an information was subsequently filed on March 18, 2026. *See Commonwealth v. Berry*, No. CP-51-CR-0001220-2026 (Phila. C.P.). These charges are currently pending, and the docket reflects that Berry is represented by the Defender Association of Philadelphia. *Id.* It also appears that an Omnibus Pre-Trial Motion was filed on Berry's behalf by the Defender Association on April 29, 2026. *Id.* The motion is currently pending, and a motions hearing is scheduled to occur on September 18, 2026, before Judge Anthony Stefanski. *Id.*

## II. STANDARD OF REVIEW

The Court grants Berry leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss Berry's SAC if it fails to state a claim. The Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Berry is proceeding *pro se*, the Court construes his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when

the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III. DISCUSSION

Berry brings constitutional claims pursuant to § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a §1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

**A. False Arrest, Wrongful Incarceration, and Malicious Prosecution**

Berry asserts that his arrest on January 23, 2026, resulted in a wrongful incarceration and subsequent acquittal. (*Id.*) "[F]alse arrest and false imprisonment claims are nearly identical causes of action that courts analyze together." *Covington v. Plymouth Twp. Police Dept.*, 779 F. Supp. 3d 509, 523 (E.D. Pa. 2025) (citing *Wilson v. Dewees*, 977 F. Supp. 2d 449, 455 (E.D. Pa. 2013); *LeCount v. Kropp*, No. 25-1161, 2025 WL 790935, at *2 (E.D. Pa. Mar. 12, 2025)). *See also Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter."). These claims sound under the Fourth Amendment. *DeLade v. Cargan*, 972 F.3d 207, 211 (3d Cir. 2020) ("[T]he Supreme Court has recognized the Fourth Amendment—and not the Due Process Clause of the Fourteenth Amendment—as the appropriate provision of the Constitution under which to analyze allegations of unlawful arrest and pretrial restraint.") (citations omitted); *see also Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.").

The Fourth Amendment requires arrests, detentions, and prosecutions to be supported by probable cause. *Harvard v. Cesnalis*, 973 F.3d 190 202-03 (3d Cir. 2020); *Covington*, 779 F. Supp. 3d at 523 ("To state these claims under Section 1983, a plaintiff must [plausibly allege] 'that: (1) there was an arrest; and (2) the arrest was made without probable cause.'") (quoting *Saintil v. Borough of Carteret*, No. 22-2898, 2024 WL 3565308, at *6 (3d Cir. July 29, 2024) (citing *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995))); *see also Noviho v. Lancaster County*, 683 F. App'x 160, 164 (3d Cir. 2017) ("Fourth Amendment false imprisonment and false arrest claims rise and fall on whether probable cause existed for the arrest." (citation omitted)). "Probable cause exists if there is a 'fair probability' that the person

committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). "[T]he Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). "In the ordinary criminal case, arrest and detention of a suspect is reasonable if it is supported by probable cause, as determined by the judge who either issues an arrest warrant or conducts a preliminary hearing." *Schneyder v. Smith*, 653 F.3d 313, 322 (3d Cir. 2011) (citing *Gerstein*, 420 U.S. at 111-14).

To state a Fourth Amendment malicious prosecution claim, a plaintiff must plausibly allege that a government official charged him without probable cause, leading to an unreasonable seizure of his person. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024) (citing *Thompson v. Clark*, 596 U. S. 36, 43, and n.2 (2022)). A malicious prosecution claim under § 1983 has five elements: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). A "favorable termination" occurs when a prosecution ends "without a conviction." *Thompson*, 596 U.S. at 49 ("In sum, we hold that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction.").

The absence of probable cause is an essential element of each of the foregoing claims.[6] *Pinkney v. Meadville, Pennsylvania*, 648 F. Supp. 3d 615, 633–34 (W.D. Pa. 2023), *aff'd*, 95 F.4th 743 (3d Cir. 2024). Berry has failed to allege plausibly that the Defendants lacked probable cause to arrest him. His scant and undeveloped allegations state only that he was pulled over and an officer told him that he was pulled over because he "ran a red-light and [was] driving erratically." (SAC at 4.) Without additional context from which the Court could conclude that the officers lacked a fair probability that a crime was committed and Berry was the person who committed the crime, he has failed to allege plausibly the lack of probable cause element of his claims.[7]

[6] However, in contrast to false arrest and false imprisonment claims, the existence of probable cause to support one charge does not automatically defeat a Fourth Amendment malicious prosecution claim alleging the lack of probable cause for another charge. *See Chiaverini*, 602 U.S. 556.

[7] Berry names District Attorney Krasner as a Defendant, alleging he had first-hand information of the illegal charges and "failed to protect [Berry] from being retaliated against after filing of initial lawsuit in federal court on CJC with regards to discrimination." (SAC at 4.) However, it is well settled that prosecutors are entitled to absolute immunity from liability for damages under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *see also Roberts v. Lau*, 90 F.4th 618, 624 (3d Cir. 2024). Absolute immunity extends to the decision to initiate a prosecution, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," presenting a state's case at trial, and appearing before a judge to present evidence. *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (cleaned up); *see also Sanders v. City of Erie*, No. 26-1135, 2026 WL 1428876, at *2 (3d Cir. May 21, 2026) (*per curiam*) ("[A] district attorney acting 'within the scope of his duties in initiating and pursuing a criminal prosecution' is immune from suit, even when a litigant alleges a lack of probable cause." (quoting *Kalina v. Fletcher*, 522 U.S. 118, 124 (1997))). Moreover, District Attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009). Thus, even if the false arrest claim was alleged plausibly, Krasner would enjoy immunity since initiating a criminal proceeding is within the scope of his representation of the Commonwealth.

**B. Excessive Force**

The Court understands Berry to allege an excessive use of force claim. "[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) ("In an excessive force case, we determine whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test."). Objective reasonableness is evaluated under the "totality of the circumstances" and "from the perspective of the officer at the time of the incident" without "the benefit of hindsight." *Brown v. Upper Darby Police Dep't*, No. 20-1452, 2021 WL 2948833, at *3 (3d Cir. July 14, 2021) (*per curiam*) (quoting *Santini*, 795 F.3d 410, 417 (3d Cir. 2015).

The Court must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *Klein v. Madison*, 374 F. Supp. 3d 389, 407 (E.D. Pa. 2019). Additional relevant factors include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Moore v. Vangelo*, 222 F. App'x 167, 170 (3d Cir. 2007) (citing *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199, 209-11 (3d Cir. 2007)). "The use of a Taser during an arrest, especially when the suspect is resisting arrest, may be reasonable." *Geist v. Ammary*, 40 F. Supp. 3d 467, 480–81 (E.D. Pa. 2014); *citing*

*Brown v. Cwynar,* 484 F. Appx. 676, 681 (3d Cir. 2012) (noting how the use of a Taser on a suspect resisting arrest is not inherently "excessive force").

Although Berry identifies officers who were present when his car was pulled over, he does not indicate which of those officers allegedly used force against him. Berry asserts that "[t]hese police officers tried putting handcuffs on I (The Plaintiff) upon not finding a weapon on my person, and then all I remember is that I was being punched, kicked, and tasered." (SAC at 4.) He also alleges that Ortega "failed to protect I (The Plaintiff) from being retaliated against by fellow co-workers by being tasered, punched, and kicked on in the process of illegal detainment." (*Id.*) These allegations clearly fall far short of stating an excessive force claim.

A plaintiff cannot state an excessive force claim by "haul[ing] before a jury all officers who were in the immediate vicinity of where excessive force occurred. This is simply not the law." *See Jutrowski v. Township of Riverdale,* 904 F.3d 280, 289 (3d Cir. 2018) (quotation marks omitted) ("a defendant's § 1983 liability must be predicated on his direct and personal involvement in the alleged violation"); *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) ("To establish liability against an individual defendant acting under color of state law, a plaintiff must show that the defendant was 'personally involved' in the use of excessive force."); *Witters v. Smith*, 736 F. Supp. 3d 238, 247 (M.D. Pa. June 10, 2024) (dismissing Fourth Amendment claim against parole agent who was present when fellow agent shot plaintiffs' dog based on lack of personal involvement); *Est. of Fisher by & through Fisher v. City of Pittsburgh*, No. 24-1234, 2025 WL 1898113, at *4 (W.D. Pa. May 8, 2025), *report and recommendation adopted as modified*, No. 24-1234, 2025 WL 1604034 (W.D. Pa. June 6, 2025) (dismissing with prejudice excessive force claim alleged against officer who did not shoot suspect and was not involved in the decision to use deadly force) (citing *McKay v. Krimmel*, No. 22-1302, 2023 WL 4231714, at

*2 (3d Cir. June 28, 2023) ("Police officers may not be held liable under section 1983 merely because they were members of a group of which some other members were guilty of abuses." (cleaned up))).

Berry does not sufficiently describe the circumstances and events that occurred on January 23, 2026, to support inferences that any potential defendants' actions were unconstitutional. As pled, Berry's SAC does not contain facts sufficient to indicate whether the force used was objectively reasonable based on the totality of the circumstances, including the relevant facts and circumstances leading up to the use of force. *See, e.g.*, *Rodriguez v. Trenton Police Dep't*, 828 F. App'x 851, 852 (3d Cir. 2020) (*per curiam*) (affirming dismissal of excessive force claim where plaintiff failed to sufficiently describe the officer's actions or her actions); *Bressi v. Brennen*, 823 F. App'x 116, 118-19 (3d Cir. 2020) (*per curiam*) (affirming dismissal of excessive force claim where plaintiff alleged he was grabbed by the neck and slammed against a concrete wall "for no reason whatsoever" while being transported to a prison); *Davis v. Schermerhorn*, No. 24-0493, 2024 WL 1517536, at *3 (E.D. Pa. Apr. 8, 2024) (dismissing excessive force claim as undeveloped when plaintiff alleged he was slammed to the ground and placed in too-tight handcuffs but provided no details about the circumstances leading to his encounter with officers); *Koyi v. Borough of Tinton Falls*, No. 21-352, 2023 WL 7195170, at *5 (D.N.J. Nov. 1, 2023) (dismissing claim alleging excessive force that failed to include "details about the circumstances that brought Plaintiff and the officers together [at the scene], what happened leading up to the use of excessive force, and which officer(s) allegedly used excessive force" ). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal

quotation marks and citations omitted). "A complaint that pleads facts merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up); *see also Falcone v. Dickstein*, 92 F.4th 193, 202 (3d Cir. 2024) (reviewing court will "disregard unsupported conclusions or legal conclusions couched as factual allegations" when determining whether dismissal was proper for failure to state a claim). Berry's excessive force claim will be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii), without prejudice to reassertion in an amended complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Berry leave to proceed *in forma pauperis* and dismiss his Second Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Because the Court cannot say at this time that Berry is unable to cure the above-noted defects in his claims, he will be granted an opportunity to file a third amended complaint in the event he can state a plausible claim against an appropriate defendant. An Order follows, which provides further instruction as to amendment.

**BY THE COURT:**

*<u>/s/ R. Barclay Surrick</u>*
**R. BARCLAY SURRICK, J.**